IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID L. FLOYD,

    Plaintiff,

v.

LT. OLSHEFSKI, et al.,

    Defendants.

3:13-CV-578

(Judge Mariani)

FILED
SCRANTON
JAN 6 2014
PER _____
DEPUTY CLERK

## MEMORANDUM

Plaintiff David L. Floyd ("Plaintiff" or "Floyd"), an inmate currently confined at the Federal Correctional Institution-Medium at Petersburg ("FCI Petersburg Medium"), Virginia, commenced this *pro se* action by filing a *Bivens*[1] civil rights Complaint under the provisions of 28 U.S.C. § 1331. (Doc. 1). In his Complaint, Floyd raises due process, excessive force and retaliation claims against the Defendants.

Presently before the Court are Defendants' motion to dismiss and for summary judgment (Doc. 11), Plaintiff's motion to amend (Doc.18), and Plaintiff's motion to dismiss Defendants' motion to dismiss and for summary judgment (Doc. 20). For the reasons set forth below, Defendants' motion to dismiss and for summary judgment will be granted in

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Egervary v. Young*, 366 F. 3d 238, 246 (3d Cir. 2004) (*citing Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relied upon the principles developed in the case law applying to section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials." *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

part, and denied in part. Plaintiff's motion to amend will be granted and his motion to dismiss Defendants' motion will be denied.

I. **Procedural History**

On February 22, 2013, Floyd filed his Complaint concerning events that occurred while he was housed at different facilities at the Allenwood Federal Correctional Center ("FCC Allenwood") in White Deer, Pennsylvania. (Doc. 1). Floyd claims that the Defendants took retaliatory actions against him, assaulted him, and harassed him while he was housed at these facilities. (*Id.*). Named as Defendants are: Lt. Olshefski, Officer Jamie Phillips, Officer C. Meyers, Officer J. Cramer, Lt. Tim Matthews, and Officer D. Schantz. (*Id.*).

Defendants filed a motion to dismiss and for summary judgment on May 6, 2013. (Doc. 11). Defendants additionally filed their brief in support (Doc. 13) and statement of material facts (Doc. 14) on May 22, 2013. Floyd filed a brief in opposition on May 24, 2013. (Doc. 16).

On June 19, 2013, Floyd filed a motion to amend his Complaint and a draft Amended Complaint. (Doc. 18, 19). Floyd also filed a motion to dismiss Defendants' motion, along with a supporting brief, on July 31, 2013. (Docs. 20, 21).

II. **Allegations of the Complaint**

While housed at FCC Allenwood, Floyd claims that he was subjected by Defendants, to various incidents of mistreatment, verbal insults, name calling, assault, harassment, and

2

retaliation. (*See* Doc. 1). Floyd was initially housed at the Low Security Correctional Institution at Allenwood ("LCSI Allenwood"). (*Id.* at 3). While there, Floyd claims he was assaulted by Defendants Meyers, Cramer, Phillips, and Olshefski on August 24, 2011. (*Id.* at 3-4). After this assault, Floyd claims Defendant Phillips continued to harass him during his time at Allenwood. (*Id.*).

Floyd alleges he was then transferred from LSCI Allenwood to the Special Housing Unit ("SHU") at Allenwood Medium in retaliation for his complaints against the Defendants and because of his fears stemming from the alleged assault and harassment. (*Id.* at 5). Before his transfer, Plaintiff claims Defendant Phillips rifled through his belongings, removing stamps, legal and personal address and contact information, as well as pictures. (*Id.*).

Plaintiff further claims that when he arrived at the SHU, he was handcuffed and placed in a holding cell for nearly ninety (90) minutes. (*Id.*). He was then greeted by Officer Brown, a non-defendant, who told him that "Bulldog", a/k/a Defendant Phillips, said hello. (*Id.*). Brown then allegedly called Floyd a "retarded child molester" and warned him to not eat the food served to him by day shift. (*Id.*).

Following a Disciplinary Hearing, Floyd was found guilty of assaulting an officer during the August 24, 2011 incident. (*Id.*). He was given thirty (30) days disciplinary segregation and lost twenty-seven (27) days of good conduct time, three (3) months of commissary, and three (3) months of visits. (*Id.*).

3

Floyd claims that after he was put on disciplinary status, Defendants intentionally housed him with a mentally unstable, medium-level inmate. (*Id.*). Floyd alleges the following occurred after he was placed in his SHU cell:

> Right after [the officers] left, inmates began yelling out [Floyd's] name, calling "Hey Floyd, keep your hands off the kids!" and "Hey everyone, there's a child molester in cell #531" and "Hey Floyd, I hope your cellie rapes you!"

(sic) (*Id.*). Floyd believes that prison officials told the other inmates his name and criminal history and about any complaints he filed through the grievance procedure. (*Id.*).

On or about April 16, 2012, Floyd was transferred from the SHU to Allenwood Medium by bus. (*Id.*). That day, Plaintiff claims Defendant Phillips was on bus detail and assaulted him. (*Id.*). Then when Floyd went to switch buses, Defendant Phillips told the new bus driver Floyd's name and that Floyd liked "li'l kids." (*Id.*). Defendant Phillips also told the bus driver to take "special care of" Floyd and yelled, "See you Floyd, keep your head on a swivel, you're gonna need it." (*Id.*).

Plaintiff alleges that for nine (9) months, the Defendants made his life a "living hell" via assaults, harassment, and retaliation. (*Id.*). As relief, Plaintiff requests monetary damages, that his twenty-seven (27) days of good conduct time be returned, and that his record be erased. (*Id.* at 4).

4

### III. Standard of Review

### A. Motion to Dismiss

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Though a complaint 'does not need detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do.'" *DelRio–Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n. 14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the

assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

"If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). If the Court considers evidence outside of the pleadings, it may convert the motion to dismiss into a motion for summary judgment. When a motion to dismiss has been alternately framed as a motion for summary judgment, the Court need not provide the parties with express notice of conversion. In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 288–89 (3d Cir. 1999); see also Carver v. Plyer, 115 F. App'x 532, 536 (3d Cir. 2004) ("motions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary judgment.").

B.  **Motion for Summary Judgment**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), cert. denied 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

IV.     Discussion

A.      Defendants' Motion to Dismiss and for Summary Judgment

1.      Plaintiff's Claims Regarding the August 24, 2011 Incident and *Heck v. Humphrey*, 512 U.S. 477 (1994)

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. This holding has been referred to as the "favorable termination rule." *See Torres v. Fauver*, 292 F.3d 141, 147 (3d Cir. 2002). "The reasoning in *Heck* has been applied to bar Bivens' claims." *Lora–Pena v. FBI*, 529 F.3d 503, 506 n. 2 (3d Cir. 2008).

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the rationale in *Heck* to prison disciplinary proceedings. The Court held that the expungement of the inmate's disciplinary proceeding would imply the invalidity of the underlying disciplinary action: "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646. Accordingly, an inmate may not bring a civil rights action for declaratory and/or

8

injunctive relief related to a prison disciplinary proceeding without first challenging and overturning, via appropriate proceedings, the disciplinary hearing decision in question. *Id.* at 646–47. In *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original), the Court explained that "a state prisoner's § 1983 action is barred (absent prior invalidation) -- *no matter the relief sought* (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) --- if success in that action would necessarily demonstrate the invalidity of confinement or its duration."

However, in *Lora-Pena v. F.B.I., supra*, at 506, the Third Circuit Court of Appeals recognized that a claim alleging excessive force in the circumstances of an arrest for an offense of which the defendant was found guilty may nonetheless be pursued where the conviction "would not be inconsistent with a holding that the officers . . . used excessive (or unlawful) force in response to his own unlawful actions." In that case, the plaintiff, Lora-Pena, brought a § 1983 claim alleging that a marshal used excessive force against him during his arrest in violation of the Eighth Amendment. *Id.* at 505. The district court dismissed Lora-Pena's complaint for failure to state a claim. *Id.* On appeal, the Third Circuit vacated the dismissal and remanded it to the lower court explaining that "Lora-Pena's convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions." *Id.* at 506. *See also Jenkins v. Hayman*, 2013 U.S. Dist. LEXIS 88446,*24-*33 (D.N.J. 2013) (The Court could, for purposes of a summary

judgment motion, credit plaintiff's version of the facts insofar as it did not contradict the basis for his underlying prison administrative conviction, since that conviction was never reversed or otherwise impaired.).

Here, Defendants argue that "Floyd's claims directly contradict the findings of the March 12, 2012" disciplinary proceeding. (Doc. 13, p. 7). Defendants argue that if the Court found in Floyd's favor, it would indirectly invalidate the finding of the disciplinary hearing officer. (*Id.*). As such, Defendants argue that all of Floyd's claims relating to the August 24, 2011 incident are barred by *Heck*, 512 U.S. 477. (*Id.* at 7-8).

The Court does not agree that *Heck* bars the Plaintiff's excessive force claims. Floyd has alleged a due process claim as well as an Eighth Amendment excessive force claim stemming from the August 2011 incident and resulting discipline. Based on the above discussion, *Heck* precludes this Court from permitting Plaintiff's challenge to the disciplinary hearing officer's decision finding him guilty of assault. But, *Heck* does not preclude the Court from considering a claim that Defendants used excessive force against Floyd on August 24, 2011 because our review of an excessive use of force claim in this context would not necessarily undermine or invalidate the outcome of the disciplinary hearing. However, as presently written, Floyd's Complaint challenges the finding of the March 12, 2012 disciplinary hearing and record since Floyd claims he was found guilty of something he did not do. This claim is barred by *Heck*.

Accordingly, Defendants' motion to dismiss Floyd's Complaint based on *Heck* will be granted. But, considering the early stages of this case and Floyd's motion to amend, the Court will allow Floyd leave to amend his Eighth Amendment excessive use of force claim to specify the involvement of the Defendants in the August 2011 event, as well as any other assaults he allegedly endured at the Defendants' hands. *See Lora-Pena, supra.* Plaintiff may not contradict the disciplinary hearing findings in his Amended Complaint. And, concomitantly, Floyd will not be permitted to amend his due process challenge with respect to loss of good conduct time credits and punishment received, as any such amendment would be futile. Plaintiff will be permitted to amend his Complaint only to allege facts showing that the Defendants used excessive force in response to Plaintiff's actions which were found to constitute an assault.

## 2. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court. Specifically, section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*

*v. Nussle*, 534 U.S. 516, 532 (2002). "'[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.'" *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (*quoting Beeson v. Fishkill Corr. Facility*, 28 F.Supp.2d 884, 894–95 (S.D.N.Y. 1998) (*citing Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71. The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (*quoting Porter*, 534 U.S. at 525). Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default.") A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable

considerations warrant review of the claim." *Gallego v. United States*, 2005 WL 1653166, *2 (M.D.Pa. 2005), citing *Spruill v. Gillis*, 372 F.3d 219, 227-232 (3d Cir. 2004).

The BOP has established a multi-tier system that allows federal prisoners to seek formal review of various aspects of imprisonment. See 28 C.F.R. §§ 542 .10, *et seq.* First, prisoners shall present their complaints to staff, who will attempt to informally resolve any issues before a prisoner files an administrative remedy. 28 C.F.R. § 542.13(a). Second, if a prisoner is unable to informally resolve his complaint, he can file a formal written complaint to the warden within twenty days of the date on which the basis of the complaint occurred. 28 C.F.R. § 542.14(a). If the prisoner is dissatisfied with the warden's response to his complaint, he may file an appeal to the Regional Director. 28 C.F.R. § 542.15(a). The Regional Director must respond to the prisoner's appeal within thirty days. 28 C.F.R. § 542.18. Finally, if the prisoner is not satisfied with the Regional Director's response, he may appeal the decision to the Central Office within thirty days of the Regional Director's response. 28 C.F.R. § 542.15(a). The General Counsel has forty days to respond after the inmates appeal has been received. 28 C.F.R. § 542.18.

Defendants move for summary judgment, alleging that Floyd has not fully exhausted the independent claims raised in the lawsuit against Defendant Phillips beyond those claims surrounding the August 24, 2011 incident. (Doc. 13, p. 8-10). Specifically, Defendants note that Floyd has failed to file any administrative remedies concerning his allegations that Defendant Phillips improperly searched his belongings, threatened him, or assaulted him on

any date other than August 24, 2011. (*Id.* at 10). In support of this motion, Defendants have submitted various documents outside the pleadings. (*See id.*). These documents include, among other things, various declarations, memos, incident reports, and an Administrative Remedy Generalized Retrieval listing all of Floyd's administrative remedy filings. (*Id.*). However, Defendants have not included copies of the administrative remedies received in their declaration and indexes.

Floyd alleges that he has successfully exhausted his administrative remedies. (Doc. 1, p. 2). Further, Plaintiff attaches documentation to his Complaint in support of his assertion that he has exhausted all claims.

The Court initially notes that both parties concede that Floyd has exhausted his administrative remedies in regards to the August 24, 2011 incident. The summary judgment record is not clear as to whether Floyd has exhausted his administrative remedies for his other claims. The records provided by Defendants offer a spare summary of Floyd's complaints. It cannot be discerned whether any claims categorized as "harassment" include allegations of assault. For example, Floyd's complaint regarding the August 24, 2011 incident is characterized in the report as "[inmate] stated staff harassed him for crime; unprofessi[ional]." (Doc. 13, Ex. 1, Att. B "Remedy ID 656550-F1, F2, R1, R2"). As is evident from the documents attached in Floyd's Complaint, Floyd not only claimed staff harassed him in this complaint, but also that he was assaulted by staff. (*See* Doc. 1). Further, the Defendants' documentation also states that Floyd filed Remedy 678140-F1,

which concerned "property damaged and missing/SHU." (Doc. 13, Ex. 1, Att. B). As such, Defendants have not met their burden with respect to Plaintiff's alleged failure to exhaust his administrative remedies. Accordingly, Defendants' motion for summary judgment will be denied without prejudice

### 3. Defendants Schantz and Matthews

Defendants move to dismiss Defendants Schantz and Matthews based on Floyd's failure to demonstrate their personal involvement in the alleged constitutional violations complained of in the Complaint. (Doc. 13, p. 11-12). Floyd concedes that he included certain parties in his suit who were not personally involved in physically assaulting him. (Doc. 18, p.1). In his proposed Amended Complaint, Floyd fails to name either Defendant Schantz or Defendant Matthews as Defendants. (*See* Doc. 19). For these reasons, Defendants Schantz and Matthews will be dismissed as Defendants.

### 4. Verbal Threats

It is well settled that verbal harassment, standing alone, does not rise to the level of a constitutional violation. See *Johnson v. Glick*, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973). Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. See *Fisher v. Woodson*, 373 F.Supp. 970, 973 (E.D.Va. 1973); *see also Balliet v. Whitmire*, 626 F.Supp. 219, 228–29 (M.D.Pa. 1996) ("[v]erbal abuse is not a civil rights violation ..."), aff'd, 800 F.2d 1130 (3d Cir. 1986). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth

Amendment's cruel and unusual punishment clause, see *Prisoners' Legal Ass'n v. Roberson*, 822 F.Supp. 185, 189 (D.N.J. 1993), or under the Fifth Amendment's substantive due process clause, see *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991).

Defendants move to dismiss Floyd's claims of verbal harassment by Defendants because these claims fail as a matter of law. (Doc. 13, p. 12-14). Defendants explain that Floyd's "alleged instance of verbal harassment were not accompanied by any reinforcing act like a physical contact and thus, his claims are constitutionally insufficient." (*Id.* at 13-14 citing *Hart v. Whalen*, 2008 WL 4107651, *10 (M.D. Pa. 2008).

In his Complaint, Plaintiff alleges generally that he was harassed, threatened, and called various names amounting to a hate crime. (Doc. 1, p. 5). Without more, these broad allegations do not state a viable constitutional claim and will be dismissed without prejudice to Plaintiff's amendment of his Complaint to allege a proper cause of action as explained above.

## B.     Plaintiff's Motion to Amend

Floyd filed his motion to amend his complaint on June 19, 2013. (Doc. 18). Considering the early stages of the claim and the Court's resolution of Defendants' motion to dismiss, we will grant Floyd's motion and allow him twenty-one (21) days in which to amend his complaint.[2]

---

[2] The Court notes that *pro se* litigants are to be granted leave to file a curative amended complaint, even when a plaintiff does not seek leave to amend. See *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 245-46 (3d Cir. 2008)(citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Although Floyd filed an Amended Complaint on June 19, 2013, it was filed prior to the resolution of Defendants' motion to dismiss.

Floyd should pay careful attention to this memorandum when amending his Complaint. He is reminded that the Amended Complaint must be complete in all respects. See Fed. R. Civ. P. 8. The Amended Complaint must contain the same docket number as the instant action and should be labeled "Amended Complaint." It must be a new pleading which stands by itself *without reference to the Complaint (Doc. 1 or Doc. 19, his proposed Amended Complaint) already filed*. The Amended Complaint should set forth Plaintiff's claims in short, concise, plain statements, and in sequentially numbered paragraphs. See Fed. R. Civ. P. 8. It should specify the offending actions alleged to have been taken by a particular Defendant, be signed, and indicate the nature of relief sought. Further, the claims set forth in the amended document should arise out of the same transaction, occurrence, or series of transactions or occurrences, and they should contain a question of law or fact common to all Defendants.

## V. Conclusion

For the reasons discussed above, Defendants' motion to dismiss and for summary judgment will be granted in part, and denied in part. Floyd's claims surrounding the August 24, 2011 incident and the disciplinary proceedings stemming from that incident will be dismissed, except for any claim of excessive force as explained herein. Defendants' motion for summary judgment based on Plaintiff's failure to exhaust is denied without prejudice.

Floyd's claims of verbal threats are dismissed.

---

(Doc. 19). Accordingly, the Court will grant Plaintiff the opportunity to file an all-inclusive curative amended complaint.

Defendants Schantz and Matthews are dismissed as Defendants.

The Court will grant Floyd's motion to amend to the extent that Floyd will be granted leave to amend his excessive use of force claims and retaliation claims.

Plaintiff's motion to dismiss Defendants' motion will be denied.

Plaintiff will have twenty-one (21) days from the date of this Order in which to file an Amended Complaint. An appropriate order follows.

/Robert D. Mariani
United States District Judge