IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID FLOYD,<br>　　　Plaintiff, | 3:13-cv-578 |
| v. | (Judge Mariani) |
| LT. OLSHEFSKI, et al.,<br>　　　Defendants. | |

## MEMORANDUM

On March 1, 2013, Plaintiff, David Floyd, an inmate formerly confined at the Allenwood Federal Correctional Center, ("FCC-Allenwood"), in White Deer, Pennsylvania, initiated the above-captioned action by filing a *Bivens*[1]-styled civil rights complaint under the provisions of 28 U.S.C. § 1331. (Doc. 1). On March 14, 2014, at the Court's direction, Plaintiff filed an amended complaint. (Doc. 30). The remaining Defendants are: Lieutenant J. Olshefski, Officer J. Cramer, Officer C. Meyers, and Officer J. Phillips.[2] (*Id.*).

Presently pending before the Court is Defendants' motion to dismiss the amended complaint and for summary judgment filed pursuant to Rules 12(b) and 56(a) of the Federal

---

[1] *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens*-type action is the federal counterpart to an action filed under 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See Paton v. LaPrade*, 524 F.2d 862 (3d Cir. 1975); *Farmer v. Carlson*, 685 F. Supp. 1335, 1338 (M.D. Pa. 1988) (Nealon, J.). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

[2] On January 6, 2014, two Defendants, D. Shantz and T. Matthews, were dismissed from this action. *See* (Docs. 25, 26).

Rules of Civil Procedure. (Doc. 34). For the reasons set forth below, Defendants' motion to dismiss will be granted in part and denied in part, and the motion for summary judgment will be denied pursuant to Federal Rule of Civil Procedure 56(d).

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint on March 1, 2013. (Doc. 1). On May 6, 2013, Defendants filed a motion to dismiss the original complaint and for summary judgment. (Doc. 11). By Memorandum and Order dated January 6, 2014, this Court granted Defendants' motion in part and denied the motion in part. (Docs. 25, 26). Specifically, the motion for summary judgment based on Plaintiff's failure to exhaust all claims, other than those arising out of the August 24, 2011 incident, was denied; the motion to dismiss Plaintiff's excessive force claim relating to the August 24, 2011 incident was denied; the motion to dismiss Plaintiff's due process claims relating to the August 24, 2011 incident, and the discipline imposed on him arising from that incident, was granted; the motion to dismiss Plaintiff's claims for verbal harassment and threats was granted; and, the motion to dismiss Defendants Shantz and Matthews as parties to this action was granted. (*Id.*). The Order also directed Plaintiff to file an amended complaint in accordance with the instructions set forth in the January 6, 2014 Memorandum. (*Id.*).

On March 14, 2014, Plaintiff filed an amended complaint. (Doc. 30).

On May 27, 2014, Defendants filed the instant motion to dismiss the amended

complaint and for summary judgment. (Doc. 34). Subsequently, on June 10, 2014, Defendants filed a statement of material facts, along with a supporting brief and exhibits. (Docs. 36, 37). Defendants move to dismiss Plaintiff's complaint arguing that his attempt to invalidate the findings of the discipline hearing officer, ("DHO"), is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and that he failed to establish a conspiracy claim. (Doc. 36, pp. 13-15, 19-20). Defendants move for summary judgment based on Plaintiff's failure to exhaust administrative remedies, failure to state an Eighth Amendment claim, and because they are entitled to qualified immunity. (Doc. 36, pp. 7-13, 16-19, 20-23). On August 11, 2014, Plaintiff filed a brief in opposition to Defendants' motion, Defendants filed a reply brief on September 4, 2014, and Plaintiff filed a sur-reply brief on October 1, 2014. (Docs. 38, 41, 42, 43). As stated, Defendants' motion will be granted in part and denied in part.

## II.  MOTION TO DISMISS

Defendants submit that Plaintiff's attempt to invalidate the findings of the discipline hearing officer is barred under *Heck v. Humphrey*, and the complaint fails to plead sufficient facts to establish a conspiracy claim. (Doc. 36, pp. 13-15, 19-20). Defendants therefore argue that these claims should be dismissed. (*Id.*). Accordingly, these claims will be addressed under the provisions of Federal Rule of Civil Procedure 12(b).

A.  *Standard of Review*

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 334 Fed. Appx. 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *George v. Rehiel*, 738 F.3d 562, 581 (3d Cir. 2013). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; FED. R. CIV. P. 8(a)(2).

### B.     *Allegations in the Amended Complaint*

Plaintiff is a federal inmate serving a sentence for possession of child pornography and was transferred to LSCI-Allenwood on August 22, 2011. (Doc. 30, ¶¶ 9, 21).

On August 24, 2011, Plaintiff alleges that Defendant Meyers accused him of lying about having a lower bunk pass based on medical needs. (*Id.* at ¶¶ 10, 11). Defendant Cramer subsequently entered the conversation and he and Defendant Meyers escorted Plaintiff to Defendant Olshefski's office. (*Id.* at ¶¶ 13-16). While in Defendant Olshefski's office, Plaintiff alleges that "one of the officers" ordered him to submit to a pat search, to which he complied. (*Id.* at ¶¶ 17, 18). During the pat search, Defendant Meyers allegedly informed the other officers that Plaintiff was "insolent" during a routine cell search. (*Id.* at ¶ 19). Plaintiff further alleges that Defendants Olshefski and Phillips verbally harassed him, Defendants Phillips and Cramer assaulted him, and that one of the officers slammed his face into the wall. (*Id.* at ¶¶ 20, 22-25, 28). Plaintiff maintains that he did not resist the officers. (*Id.* at ¶¶ 26, 27). Plaintiff alleges that, as a result of this altercation, he suffered cuts and bruises, as well as post-traumatic stress disorder, anxiety, and "other trauma." (*Id.* at ¶¶ 30, 31). Plaintiff claims that he was denied medical attention for the physical injuries sustained during the altercation. (*Id.* at ¶ 30).

Plaintiff alleges that he was then transferred, by force, to the Special Housing Unit, ("SHU"). (*Id.* at ¶ 29).

On that same day, August 24, 2011, Plaintiff alleges that he was issued a disciplinary report charging him with assaulting officers and disobeying a direct order. (*Id.* at ¶ 32). Plaintiff was subsequently found guilty of the charges. (*Id.* at ¶ 33).

On August 29, 2011, Plaintiff filed a BP-9 administrative remedy stating that he was assaulted and sexually harassed by Defendants Phillips and Olshefski. (*Id.* at ¶ 34).

In September 2011, Plaintiff claims that Defendant Phillips was assigned to the SHU. (*Id.* at ¶ 35). Plaintiff was concerned that Defendant Phillips would "bother[] him" and therefore wrote to a lieutenant expressing his concerns. (*Id.* at ¶ 36).

On an unknown date, Defendant Phillips escorted Plaintiff to the shower and allegedly attempted to talk to him, causing Plaintiff stress and anxiety. (*Id.* at ¶ 37). While Defendant Phillips was assigned to the SHU, Plaintiff claims that he complained, in writing, to a lieutenant that someone interfered with his mail and removed belongings from his cell. (*Id.* at ¶¶ 38-40).

In December 2011, Plaintiff placed a phone call to his sister and expressed a fear for his safety due to harassment by Defendant Phillips. (*Id.* at ¶ 41). Plaintiff alleges that Defendant Phillips listened to a tape recording of this phone conversation and thereafter threatened and verbally harassed Plaintiff based on the phone conversation. (*Id.* at ¶ 42). Plaintiff claims that he again complained to a lieutenant about Defendant Phillips' conduct, but received no response. (*Id.* at ¶¶ 43, 44).

6

Plaintiff alleges that Defendant Phillips told other guards and inmates that Plaintiff was a pedophile, placing Plaintiff's safety in jeopardy. (*Id.* at ¶¶ 45-47). Plaintiff further alleges that certain staff members warned him to not eat food served during Defendant Phillips' shift. (*Id.* at ¶ 48).

On January 14, 2012, Plaintiff alleges that Defendant Phillips escorted him to the shower and assaulted him. (*Id.* at ¶ 50). Plaintiff reported the incident and filed a grievance related to the incident. (*Id.* at ¶¶ 51, 52).

Plaintiff alleges that on January 16 or 18, 2012, he was transferred from LSCI-Allenwood to the SHU at Allenwood-Medium in retaliation for his complaints against the Defendants and because of his fears stemming from the alleged assault and harassment. (*Id.* at ¶¶ 53, 55, 64). Before his transfer, Plaintiff alleges that Defendant Phillips rifled through his belongings, removing stamps, legal and personal documents, as well as pictures. (*Id.* at ¶¶ 54, 61). Plaintiff subsequently filed administrative remedies regarding Defendant Phillips' alleged conduct. (*Id.* at ¶ 62).

When Plaintiff arrived at the SHU, he alleges that he was handcuffed and placed in a holding cell for at least ninety (90) minutes. (*Id.* at ¶ 59). He was greeted by Officer Brown, a non-defendant, who told him that "Bulldog", a/k/a Defendant Phillips, called and "wished [him] well." (*Id.* at ¶ 56, 57). Brown then called Plaintiff a "retarded child molester" and warned him to not eat the food served to him by day shift. (*Id.* at ¶ 58).

7

Plaintiff alleges that Defendants intentionally housed him in a cell with a mentally unstable, medium-level inmate, against policy. (*Id.* at ¶¶ 60, 64). Plaintiff further alleges that he was denied food and denied access to a telephone. (*Id.* at ¶¶ 66, 67).

On April 16, 2012, Plaintiff alleges that he was removed from his cell and transferred to the Federal Correctional Institution, ("FCI"), Petersburg, Virginia. (*Id.* at ¶¶ 68, 79). During the transport, Plaintiff alleges that Defendant Phillips verbally accosted him and tightened his restraints so that he could not move his fingers and had difficulty breathing. (*Id.* at ¶¶ 69-75, 78). Plaintiff further alleges that, during this transport, other officers forcefully pushed him against a vehicle during a search of his person. (*Id.* at ¶¶ 76-78).

Plaintiff alleges that Defendants Meyers, Cramer, and other unknown officers, permitted the alleged abuse by Defendant Phillips. (*Id.* at ¶ 63).

For relief, Plaintiff requests a declaratory judgment, compensatory and punitive damages, as well as his costs. (*Id.* at p. 12).

C.  Discussion

   1.  Plaintiff's Claims Regarding the August 24, 2011 Incident - *Heck v. Humphrey*

Defendants argue that Plaintiff's claims in the amended complaint regarding the findings of the discipline hearing officer should be dismissed pursuant to the favorable

8

termination rule in *Heck v. Humphrey*, and *Edwards v. Balisok*, 520 U.S. 641 (1997).³ (Doc. 36, pp. 13-15). They assert that Plaintiff's claims would essentially invalidate the findings of the discipline hearing officer, but Plaintiff has not shown that the DHO's decision was declared invalid or overturned so as to state a cognizable claim under *Bivens*. (*Id.*). Defendants contend that because any judgment in Plaintiff's favor would call into question the validity of his sentence, the claims are not cognizable in this action. (*Id.*).

In *Heck v. Humphrey*, the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87.

In *Edwards v. Balisok*, the Supreme Court extended the rationale in *Heck* to disciplinary proceedings, holding that the expungement of the inmate disciplinary proceeding would imply the invalidity of the underlying disciplinary action. *Edwards*, 520 U.S. 641. The Court stated, "[t]he principal procedural defect complained of by respondent

---

³ While *Heck* and *Balisok* involved § 1983 cases, courts have extended their holdings to *Bivens* actions. *See Lora-Pena v. F.B.I.*, 529 F.3d 503, 506 n.2 (3d Cir. 2008) ("Although *Heck* involved a § 1983 action by a state prisoner, the reasoning in *Heck* has been applied to bar *Bivens* claims.") (citing *Williams v. Hill*, 74 F.3d 1339, 1341 (D.C. Cir. 1996) (per curiam)).

would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Edwards*, 520 U.S. at 646. Accordingly, an inmate may not bring a civil rights action for declaratory and injunctive relief related to an inmate disciplinary proceeding without first challenging and overturning, via appropriate proceedings, the disciplinary hearing in question. *Edwards*, 520 U.S. at 646-47. In *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original), the Court explained that "a state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — *if success* in that action would necessarily demonstrate the invalidity of the confinement or its duration."

However, Courts have considered whether *Heck* should be applied to excessive force claims. *See, e.g., Garrison v. Porch*, 376 Fed. Appx. 274, 278-79 (3d Cir. 2010) (concluding that an assault conviction does not automatically bar an excessive force claim under *Heck* if the plaintiff first acted aggressively, constituting assault against the officer, but then the officer used an unreasonable amount of force in arresting him); *Nelson v. Jashurek*, 109 F.3d 142 (3d Cir. 1997) (finding that *Heck* did not bar an excessive force claim brought by a plaintiff who had previously been convicted for resisting arrest). As stated in this Court's January 6, 2014 Memorandum, the Third Circuit Court of Appeals in *Lora-Pena*, 529 F.3d 503, recognized that a claim alleging excessive force in the

circumstances of an arrest for an offense of which the defendant was found guilty may nonetheless be pursued where the conviction "would not be inconsistent with a holding that the officers ... used excessive (or unlawful) force in response to his own unlawful actions." *Id.* at 506.

In the instant matter, the determination of guilt at the prison disciplinary hearing does not necessarily preclude Plaintiff's excessive force claim. To determine whether a correctional officer has used excessive force in violation of the Eighth Amendment, Courts consider several factors, including:

> (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Plaintiff may still prevail on his claim even accepting that the discipline hearing officer correctly found that Plaintiff had committed conduct that could lead to violence. It is possible that Plaintiff was insolent and did "'jump' off a wall to assault an officer" (Doc. 38, p. 7; Doc. 41, p. 7), but Defendants then proceeded to use excessive force to control Plaintiff. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (the question in an excessive force claim turns on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm'") (citation omitted). The

11

Court finds that nothing in Plaintiff's excessive force claim necessarily challenges the constitutionality of the disciplinary conviction.[4] A finding in favor of Plaintiff would not necessarily imply the invalidity Plaintiff's disciplinary conviction.[5]

Accordingly, *Heck* does not preclude the Court from considering a claim that Defendants used excessive force against Plaintiff on August 24, 2011 because review of an excessive use of force claim in this context would not necessarily undermine or invalidate the outcome of the disciplinary hearing. Plaintiff has adequately alleged facts showing that Defendants may have used excessive force in response to Plaintiff's actions. Thus, Defendants' motion to dismiss on this ground will be denied.

2. **Failure to State a Conspiracy Claim**

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392,

---

[4] The Court previously determined that *Heck* barred Plaintiff's due process claim relating to the August 24, 2011 incident, and the discipline imposed on him arising from that incident. (Doc. 25).

[5] Plaintiff acknowledges that he "can't correct the DHO's decision" and is "fully aware that in order to invalidate the findings of the DHO [he must pursue his claims] in a [] habeas corpus action." (Doc. 43, pp. 3-4).


400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The Plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.*

Plaintiff has concluded that Defendants have conspired to violate his rights yet he has failed to evidence any facts showing an agreement or plan formulated and executed by the Defendants to achieve this conspiracy. *See* (Doc. 30). Plaintiff cannot rely on unsupported claims of conspiracy. In a conclusory fashion, the amended complaint states that "[a]ll Defendants, jointly and several[l]y, acted to conspire to deprive Plaintiff of his right to equal protection under the law, to exercise his First Amendment rights, and to be free from physical abuse rising to cruel and unusual punishment." (Doc. 30, ¶ 80). Plaintiff first addresses the elements of a conspiracy claim in his sur-reply brief and claims that "Phillips, planned and imperiled, through his coworkers, Olshefski, Cramer, Myers, and others... to create an environment for Floyd that put his safety into jeopardy." (Doc. 43, pp. 6-8). Without a factual showing which gives some substance to this conspiracy claim, Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The

law is clear that bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding that conspiracy claims which are based upon a *pro se* plaintiff's subjective suspicions and unsupported speculation are properly dismissed under § 1915(d)).

The amended complaint fails to allege an agreement or plan formulated and executed by Defendants or anyone else which rises to the level of a conspiracy. The Court finds that Plaintiff's "bare, conclusory allegations" are insufficient to allege a conspiracy. *See Hodge v. United States*, 2009 WL 2843332, *11 (M.D. Pa. 2009) (dismissing Plaintiff's "broad" conspiracy claim because "he does not aver facts sufficient to establish an agreement between the individual defendants to deprive plaintiff of his rights or from which such an agreement could reasonably be inferred"). Absent any allegations which would reveal the existence of an agreement designed to deny the constitutional rights of Plaintiff, he cannot maintain his conspiracy claim. In sum, Plaintiff's allegations, standing alone, are insufficient to state a conspiracy claim. Accordingly, Defendants' motion to dismiss the conspiracy claim will be granted.

## III. MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment, and rely upon matters outside the pleadings, with respect to the issues of exhaustion of administrative remedies, failure to

state an Eighth Amendment claim, and qualified immunity. (Doc. 36, pp. 7-13, 16-19, 20-23). In response to Defendants' motion for summary judgment, Plaintiff requests that the Court deny the motion so that ample discovery may be conducted. (Docs. 38, 41, 43).

Upon consideration of Plaintiff's filings, and in light of his *pro se* status, the Court will construe Plaintiff's documents as requests pursuant to Federal Rule of Civil Procedure 56(d).[6] Federal Rule of Civil Procedure 56(d) states:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d). The rule requires that "a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988). Moreover, "district courts usually grant properly filed requests for discovery under Rule 56(d) 'as a matter of course,' whether the nonmovant's response to a summary

---

[6] In his sur-reply brief, Plaintiff references Federal Rule of Civil Procedure 56(f). (Doc. 43, p. 4). On December 1, 2010, amendments to Rule 56 took effect and certain subdivisions were reorganized. *See* FED. R. CIV. P. 56, Advisory Committee Notes regarding 2010 Amendments. Pursuant to those amendments, the provisions of former subdivision (f) were moved to subdivision (d), without substantial change. *Compare* FED. R. CIV. P. 56(f) (2009), *with* FED. R. CIV. P. 56(d) (2010); *see also id.*

15

judgment motion is characterized as a motion, affidavit, or declaration." *Shelton v. Bledsoe*, 2015 WL 74192 74192, *11 (3d Cir. 2015) (citing *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 309-10 (3d Cir. 2011)).

Plaintiff contends that he will be able to establish certain constitutional claims if permitted to engage in discovery. *See* (Docs. 38, 41, 43). The Court finds that it would be improper to rule on Defendants' summary judgment motion at this juncture based on Plaintiff's request for time to complete discovery. *See Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007) ("[I]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'") (quoting *Dowling*, 855 F.2d at 139). Accordingly, Defendants' motion for summary judgment will be denied pursuant to Federal Rule of Civil Procedure 56(d), with the right to renew the motion at a later point in the process of this case.

## IV. CONCLUSION

Based on the foregoing discussion, Defendants' motion to dismiss and for summary judgment will be granted in part and denied in part. Defendants' motion to dismiss based on Plaintiff's attempt to invalidate the findings of the discipline hearing officer will be denied. Defendants' motion to dismiss Plaintiff's conspiracy claim will be granted. Defendants' motion for summary judgment will be denied without prejudice.

An appropriate Order follows.

Date: March 26, 2015

Robert D. Mariani
United States District Judge