IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID FLOYD, | : | Civil No. 3:13-cv-578 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| LT. OLSHEFSKI, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

I. **Background**

On March 1, 2013, Plaintiff, David Floyd, an inmate formerly confined at the Allenwood Federal Correctional Center, ("FCC-Allenwood"), in White Deer, Pennsylvania, initiated the above-captioned action by filing a *Bivens*-styled civil rights complaint under the provisions of 28 U.S.C. § 1331. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 30). The named Defendants are Lieutenant J. Olshefski, Officer J. Cramer, Officer C. Meyers, and Officer J. Phillips.

Previously by Memorandum and Order dated March 26, 2015, Defendants' motion to dismiss and for summary judgment was granted in part and denied in part. (Docs. 46, 47). The Order granted Defendants' motion to dismiss as to the conspiracy claim, denied the motion to dismiss as to the excessive force claim relating to the August 24, 2011 incident, and denied the motion for summary judgment without prejudice. (*Id.*).

Presently before the Court is Defendants' motion for reconsideration (Doc. 48) of this Court's March 26, 2015 Order partially denying Defendants' dispositive motion. Defendants request that the Court reconsider the March 26, 2015 Memorandum regarding Defendants' favorable termination defense to Plaintiff's excessive force claim, and Plaintiff's failure to exhaust his claims. For the reasons set forth below, the motion for reconsideration will be denied.

## II.  Motion for Reconsideration Standard of Review

A motion for reconsideration is a device of limited utility. It may be used only to seek remediation for manifest errors of law or fact or to present newly discovered evidence which, if discovered previously, might have affected the court's decision. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986); *Massachusetts Mutual Life Insurance Co. v. Maitland*, Civil No. 87-0827 (M.D. Pa. March 1, 1989) (Rambo, J.). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Quineros*, 176 F.3d 669, 677 (3d Cir. 1999), *citing North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). A motion for reconsideration is appropriate in instances where the court has

"...misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." See Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration 915 F. Supp. 712 (M.D. Pa. 1996), quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983). It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus. Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

### III. Discussion

#### A. Excessive Force Claim Regarding the August 24, 2011 Incident

In the instant motion for reconsideration, Defendants argue that the favorable termination rule in Heck v. Humphrey bars Plaintiff's excessive force claim. (Docs. 48, 49). In opposition to Defendants' motion for reconsideration, Plaintiff argues that a review of his excessive force claim would not necessarily undermine the DHO decision, and that Defendants are simply attempting "to manipulate this Court". (Doc. 52, p. 3). He further asserts that the DHO decision was biased, based on lies and falsified documents, and there

3

was not "some evidence" to support the decision. (Doc. 52, pp. 4, 7-8).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. This holding has been referred to as the "favorable termination rule." *See Torres v. Fauver*, 292 F.3d 141, 147 (3d Cir. 2002). "The reasoning in *Heck* has been applied to bar *Bivens*['] claims." *Lora-Pena v. FBI*, 529 F.3d 503, 506 n.2 (3d Cir. 2008).

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the rationale in *Heck* to disciplinary proceedings, holding that the expungement of the inmate disciplinary proceeding would imply the invalidity of the underlying disciplinary action. *Edwards*, 520 U.S. 641. The Court stated, "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Edwards*, 520 U.S. at 646. Accordingly, an inmate may not bring a civil rights action for declaratory and injunctive relief related to an inmate disciplinary proceeding without first challenging and overturning, *via* appropriate proceedings, the disciplinary

hearing in question. *Edwards*, 520 U.S. at 646-47. In *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original), the Court explained that "a state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — *if success* in that action would necessarily demonstrate the invalidity of the confinement or its duration."

However, Courts have considered whether *Heck* should be applied to excessive force claims. *See, e.g., Garrison v. Porch*, 376 Fed. Appx. 274, 278-79 (3d Cir. 2010) (concluding that an assault conviction does not automatically bar an excessive force claim under *Heck* if the plaintiff first acted aggressively, constituting assault against the officer, but then the officer used an unreasonable amount of force in arresting him); *Nelson v. Jashurek*, 109 F.3d 142 (3d Cir. 1997) (finding that *Heck* did not bar an excessive force claim brought by a plaintiff who had previously been convicted for resisting arrest). The Third Circuit Court of Appeals in *Lora-Pena*, 529 F.3d 503, recognized that a claim alleging excessive force in the circumstances of an arrest for an offense of which the defendant was found guilty may nonetheless be pursued where the conviction "would not be inconsistent with a holding that the officers ... used excessive (or unlawful) force in response to his own unlawful actions." *Id.* at 506.

Defendants urge to the Court reconsider its previous finding that a determination of

guilt at the prison disciplinary hearing does not necessarily preclude Plaintiff's excessive force claim. Regarding the August 24, 2011 incident, Defendants note that the Discipline Hearing Officer ("DHO") found that after Plaintiff was instructed to place his hands on the wall to be searched, Plaintiff complied but then pushed himself from the wall, argued with officers and resisted the officers. (Doc. 49, pp. 4-5). The DHO further found that Defendants Olshefski and Matthews attempted to control Plaintiff, but he continued to resist, causing an injury to Olshefski. (Id.). Conversely, Plaintiff alleges that he never resisted the officers and never assaulted an officer. (Doc. 30 ¶¶ 26, 27). He claims that the officers grasped his neck, threw his face into the wall, struck him in the hip and kidney area, grabbed his arm, insulted him, and then took him to the Special Management Unit. (Id. at ¶¶ 23-29). Defendants assert that if a jury were to find in favor of Plaintiff, that he did not resist the officers and they attacked him without provocation, that finding would directly contradict the findings of the DHO. (Doc. 48, pp. 7-12). Thus, they argue that the favorable termination rule bars Plaintiff's excessive force claim. (Id.). The Court does not agree that Heck bars Plaintiff's excessive force claims.

At the DHO hearing, Plaintiff stated that after he was asked to go to the Lieutenant's office, staff pushed him into the wall, and made it appear that he was resisting. (Doc. 49, Ex. A, DHO Report; Doc. 36-1, Ex. 1, Attach. F). Plaintiff summarized the incident as follows:

6

> They brought me down to the Lt.'s office and told me to shut up. Olshefski said put my hands against the wall, and I did. Cramer and Myers told me why I was there. I had my head turned and I asked if I could speak. They said no. My head got pushed into the wall. Olshefski pushed me into the wall and that made it look like I resisted. Because everyone was so tight around me, I'm guessing Olshefski got cut because of that. I've never done anything like this. I didn't do anything.

(Doc. 36, Ex. 1, Attach. V, DHO Report).

In reviewing the evidence, the DHO found that after Plaintiff was told to put his hands against the wall to be searched, Plaintiff complied but then pushed himself from the wall, argued with officers and resisted attempts to be controlled. (Doc. 36, Ex. 1, Attach. V, DHO Report). The DHO determined that Defendants Olshefski and Matthews attempted to control Plaintiff, but Plaintiff continued to resist, causing an injury to Lieutenant Olshefski. (*Id.*). The DHO found Plaintiff guilty of the prohibited act of "Assaulting Any Person", and imposed sanctions for this violation. (Doc. 36, Ex. 1, Attach. V, DHO Report; Doc. 37, SMF ¶¶ 44-45). In making his findings and imposing discipline, the DHO found as follows:

> The DHO did not find FLOYD's claim of no wrong doing credible. The incident specific to this case, began with FLOYD defying directives of his unit team regarding a cell placement, according to Counselor Myers and Case Manager Cramer. This defiance continued with FLOYD's escort to the Lieutenant's Office area and interaction with Lieutenants Olshefski and Matthews. The DHO fully believed FLOYD resisting directives provided to him both verbally and physically as noted. *As FLOYD continued to argue, staff involved believed it necessary to physically restrain FLOYD.* Ultimately, during the placement of hand restraints upon FLOYD, Lt. Olshefski was injured. Had it not been for FLOYD's outburst, the DHO did not believe this incident would have likely occurred. Ultimately, the DHO found FLOYD responsible for the injury to Olshefski, intended or not.

(Doc. 36, Ex. 1, Attach. V, DHO Report) (emphasis added).

The DHO's finding that Plaintiff committed an assault does not necessarily preclude Plaintiff's excessive force claim. Consistent with *Heck* and the DHO's findings, it is entirely possible that Plaintiff committed the assault, and Defendants proceeded to use force to control Plaintiff. The question thus remains as to whether that use of force was excessive. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (the question in an excessive force claim turns on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm'") (citation omitted). *Heck* does not preclude the Court from considering a claim that Defendants used excessive force against Plaintiff on August 24, 2011 because review of an excessive force claim in this context would not necessarily undermine or invalidate the outcome of the disciplinary hearing. Thus, Defendants' motion for reconsideration with respect to the excessive force claim will be denied.

### B. Exhaustion

Defendants next request that the Court reconsider the March 26, 2015 Memorandum and Order denying their motion for summary judgment regarding exhaustion. (Doc. 49, pp. 12-14). The Order denied the motion based on Plaintiff's request for discovery, and noted that, in light of Plaintiff's *pro se* status, "it would be improper to rule on Defendants' summary judgment motion at this juncture based on Plaintiff's request for time to complete

8

discovery. *See Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007) ("[I]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'")." (Doc. 46, p. 16).

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to the remaining claims, and failed to present any evidence that he exhausted his administrative remedies. (*Id.*). Defendants maintain that the evidence of record, including declarations, rejected remedies, and the Bureau of Prisons Sentry report, establishes that Plaintiff failed to exhaust his administrative remedies. (*Id.*). They further contend that Plaintiff failed to submit an affidavit, motion, or declaration in support of his request for discovery. (*Id.*). Thus, Defendants request that the Court enter summary judgment in their favor. (*Id.*). Alternatively, Defendants request that the Court order discovery only as to exhaustion. (*Id.* at p. 14). In response to the exhaustion argument, Plaintiff claims that "total exhaustion" is not required, Defendants thwarted his efforts to exhaust administrative remedies, and have not provided all of his administrative remedies. (Doc. 52; Doc. 54, pp. 2, 8).

The Court finds that the March 26, 2015 Memorandum denying summary judgment is not troubled by manifest errors of law or fact. To the extent that Plaintiff seeks any documents related to exhaustion, this request shall be granted, and discovery will be ordered solely as to the exhaustion issue.

## III.   Conclusion

In support of the motion for reconsideration, Defendants essentially elaborate on the arguments previously made in support of their dispositive motion. Defendants fail to advance an intervening change in controlling law, to present newly found evidence, or to establish that a clear error of law or fact exists. Nor do they establish that the Court came to its conclusions by way of some gross misunderstanding of the facts or law of this case. Consequently, Defendants have failed to demonstrate a need to reconsider the March 26, 2015 Memorandum and Order. That Order is not troubled by manifest errors of law or fact and Defendants have not presented anything new, which if previously presented, might have affected the decision. Accordingly, the motion for reconsideration will be denied. An appropriate Order shall issue.

Date: February 22, 2016

Robert D. Mariani
United States District Judge