**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID FLOYD, | : | Civil No. 3:13-cv-578 |
| Plaintiff | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | |
| LT. OLSHEFSKI, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

On March 1, 2013, Plaintiff, David Floyd, an inmate formerly confined at the

Allenwood Federal Correctional Center, ("FCC-Allenwood"), in White Deer, Pennsylvania,

initiated the above-captioned action by filing a *Bivens*-styled civil rights complaint under the

provisions of 28 U.S.C. § 1331. (Doc. 1). The matter is proceeding *via* an amended

complaint. (Doc. 30). The named Defendants are Lieutenant J. Olshefski, Officer J.

Cramer, Officer C. Meyers, and Officer J. Phillips.

Presently before the Court is Plaintiff's "motion to produce material for discovery and

appoint counsel." (Doc. 51). For the reasons set forth below, the motion for discovery will

be granted in part and denied in part, and the request for counsel will be denied without

prejudice.

## I.    Request for Discovery

### A.    Standard of Review

A party who has received evasive or incomplete discovery responses may seek a

court order compelling disclosure or discovery of the materials sought. *See* FED. R. CIV. P.

37(a).  The moving party must demonstrate the relevance of the information sought to a

particular claim or defense.  The burden then shifts to the opposing party, who must

demonstrate in specific terms why a discovery request does not fall within the broad scope

of discovery or is otherwise privileged or improper.  *Goodman v. Wagner*, 553 F. Supp. 255,

258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery in order to ensure that

litigation proceeds with "the fullest possible knowledge of the issues and facts before trial."

*Hickman v. Taylor*, 349 U.S. 495, 501 (1947).  The procedural rule defining the scope and

limits of discovery provides that "[p]arties may obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of the

case considering the importance of the issues at stake in the action, the amount in

controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of

the proposed discovery outweighs its likely benefit. Information within this scope of

discovery need not be admissible in evidence to be discoverable."  FED. R. CIV. P. 26(b)(1).

"[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted.

The presumption that such matter is discoverable, however, is defeasible."  *Pearson v.*

*Miller*, 211 F.2d 57, 65 (3d Cir. 2000).  Furthermore, the court may limit discovery where: "(i)

the discovery sought is unreasonably cumulative or duplicative, or can be obtained from

2

some other source that is more convenient, less burdensome, or less expensive; (ii) the

party seeking discovery has had ample opportunity to obtain the information by discovery in

the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

FED. R. CIV. P. 26(b)(2)(c).

## B.   Discussion

In the instant motion to compel discovery, Plaintiff sets forth ten (10) requests for

production of documents that he asserts are relevant and necessary for the litigation of his

case. (Doc. 51). Plaintiff's discovery requests will be granted insofar as they are relevant to

the excessive force claim at issue in this matter. The Court finds that the following

discovery requests, numbers 1, 2, 5, and 6, are relevant to the remaining claims before the

Court, and will be granted.

Request Number 1

Video from the camera located outside of the Lieutenant[']s office from the LSCI
Allenwood compound between the hours of 0930 and 0950. By producing this video
it will show that Mr. Floyd's claims from the August 24, 2011 incident were
prevaricated by the defendants and that Mr. Floyd did not ever "jump" or "push off"
any wall to assault Lt. Olshefski, or any other officer of the FBOP.

Request Number 2[1]

Photographs taken per the request of SIA Officer D. Schontz, showing the bruises
sustained after Officer J. Phillips assaulted Floyd while he was housed in the SHU.

---

[1]     Although this request could reasonably be read to refer to an incident other than the August
24, 2011 incident, the Court will grant this request subject to such clarification as Defendants may offer in
response.

These photographs were taken on around the second week of January, 2012; after Floyd spoke with and filed a complaint with Schontz as well as the SHU Lt. S. Danner.  SIA Officer Schontz should have noted in the record when these were taken.

Request Number 5

All employment records, and reviews of the defendants, showing any prior misconduct sanctions, and or administrative proceedings and discipline during their tenure with the federal bureau of prisons.

Request Number 6

The name or names and, if known, the address and telephone number of each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

(Doc. 51, pp. 2-3).

To assist in the orderly and expeditious disposition of this action, Defendants shall provide the appropriate responses to Plaintiff's discovery requests 1, 2, 5, and 6, within (30) days of the date of this Order.  The remainder of Plaintiff's requests, numbers 3, 4, 7, 8, 9, and 9, will be denied.

## II.    **Request for the Appointment of Counsel**

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the Court has discretion "to request an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915(e)(1); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997); *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v.*

*Grace*, 6 F.3d 147, 153 (3d Cir. 1993).  The United States Court of Appeals for the Third

Circuit has stated that the appointment of counsel for an indigent litigant should be made

when circumstances indicate "the likelihood of substantial prejudice to him resulting, for

example, from his probable inability without such assistance to present the facts and legal

issues to the court in a complex but arguably meritorious case."  *Smith-Bey v. Petsock*, 741

F.2d 22, 26 (3d Cir. 1984).

The initial determination to be made by the Court in evaluating the expenditure of the

"precious commodity" of volunteer counsel is whether the case has some arguable merit in

fact or law.  *Montgomery*, 294 F.3d at 499.  If a plaintiff overcomes this threshold hurdle,

other factors to be examined are:

(1)   the plaintiff's ability to present his or her own case;
(2)   the difficulty of the particular legal issues;
(3)   the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;
(4)   the plaintiff's capacity to retain counsel on his or her own behalf;
(5)   the extent to which the case is likely to turn on credibility determinations; and
(6)   whether the case will require testimony from expert witnesses.

*Id.* (citing *Tabron*, 6 F.3d at 155-57).  The Third Circuit Court of Appeals added two other

factors to be taken into consideration: (1) the court's willingness to aid the indigent party in

presenting his or her own case; and (2) the available supply of lawyers willing to accept

section 1915(e) requests within the relevant geographic area.  *See Gordon v. Gonzalez*,

232 Fed. Appx. 153 (3d Cir. 2007).

Assuming *arguendo* that the complaint has merit, Plaintiff fails to set forth any

circumstances warranting the appointment of counsel.  *See Tabron*, 6 F.3d at 155-56.

It appears that Plaintiff is capable of properly and forcefully prosecuting his claims, and that

discovery neither implicates complex legal or factual issues.  The legal issues herein are

relatively simple and may not require expert testimony.  Furthermore, despite his

incarceration, investigation of the facts is not beyond Plaintiff's capabilities and he is familiar

with the facts of his case.  Thus far, it is obvious that Plaintiff is capable of competently

litigating this matter.  It is also noted that this Court does not have a large group of attorneys

who would represent this action in a *pro bono* capacity.

Based on the foregoing, it does not appear that Plaintiff will suffer prejudice if forced

to prosecute this case on his own.  The Court's duty to construe *pro se* pleadings liberally,

*Haines v. Kerner*, 404 U.S. 519 (1972), *Riley v. Jeffes*, 777 F.2d 143, 147-48 (3d Cir. 1985),

coupled with Plaintiff's apparent ability to litigate this action, militate against the appointment

of counsel.  Accordingly, the request for appointment of counsel will be denied, however

said denial will be without prejudice.  As the Court in *Tabron* stated,

> [A]ppointment of counsel under § 1915(d) may be made at any point in the
> litigation and may be made by the district court *sua sponte* ... even if it does
> not appear until trial (or immediately before trial) that an indigent litigant is not
> capable of trying his or her case, the district court should consider
> appointment of counsel at that point.

*Tabron*, 6 F.3d at 156-57.  Therefore, in the event that future proceedings demonstrate the

need for counsel, the matter may be reconsidered either *sua sponte* or upon motion of

Plaintiff.

An appropriate Order shall issue.

Date:  February  22 , 2016

Robert D. Mariani
United States District Judge